# EXHIBIT A

*Part 2*

# COVER SHEET FOR FILING CIVIL ACTIONS
COMMONWEALTH OF VIRGINIA

Case No. .....CC 18-1802.....
(CLERK'S OFFICE USE ONLY)

.....Hampton, Virginia..... ..... Circuit Court

.....Priority Automotive Hampton, Inc..... v./In re: ..... .....Jeremiah W. Mims.....
PLAINTIFF(S)      DEFENDANT(S)

I, the undersigned [X] plaintiff [ ] defendant [ ] attorney for [ ] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

**GENERAL CIVIL**

**Subsequent Actions**
- [ ] Claim Impleading Third Party Defendant
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Counterclaim
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Cross Claim
- [ ] Interpleader
- [ ] Reinstatement (other than divorce or driving privileges)
- [ ] Removal of Case to Federal Court

**Business & Contract**
- [ ] Attachment
- [ ] Confessed Judgment
- [ ] Contract Action
- [ ] Contract Specific Performance
- [ ] Detinue
- [ ] Garnishment

**Property**
- [ ] Annexation
- [ ] Condemnation
- [ ] Ejectment
- [ ] Encumber/Sell Real Estate
- [ ] Enforce Vendor's Lien
- [ ] Escheatment
- [ ] Establish Boundaries
- [ ] Landlord/Tenant
  - [ ] Unlawful Detainer
- [ ] Mechanics Lien
- [ ] Partition
- [ ] Quiet Title
- [ ] Termination of Mineral Rights

**Tort**
- [ ] Asbestos Litigation
- [ ] Compromise Settlement
- [ ] Intentional Tort
- [ ] Medical Malpractice
- [ ] Motor Vehicle Tort
- [ ] Product Liability
- [ ] Wrongful Death
- [ ] Other General Tort Liability

**ADMINISTRATIVE LAW**
- [ ] Appeal/Judicial Review of Decision of (select one)
  - [ ] ABC Board
  - [ ] Board of Zoning
  - [ ] Compensation Board
  - [ ] DMV License Suspension
  - [ ] Employee Grievance Decision
  - [ ] Employment Commission
  - [ ] Local Government
  - [ ] Marine Resources Commission
  - [ ] School Board
  - [ ] Voter Registration
  - [ ] Other Administrative Appeal

**DOMESTIC/FAMILY**
- [ ] Adoption
  - [ ] Adoption – Foreign
- [ ] Adult Protection
- [ ] Annulment
  - [ ] Annulment – Counterclaim/Responsive Pleading
- [ ] Child Abuse and Neglect – Unfounded Complaint
- [ ] Civil Contempt
- [ ] Divorce (select one)
  - [ ] Complaint – Contested*
  - [ ] Complaint – Uncontested*
  - [ ] Counterclaim/Responsive Pleading
  - [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
- [ ] Separate Maintenance
  - [ ] Separate Maintenance Counterclaim

**WRITS**
- [ ] Certiorari
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Prohibition
- [ ] Quo Warranto

**PROBATE/WILLS AND TRUSTS**
- [ ] Accounting
- [ ] Aid and Guidance
- [ ] Appointment (select one)
  - [ ] Guardian/Conservator
  - [ ] Standby Guardian/Conservator
  - [ ] Custodian/Successor Custodian (UTMA)
- [ ] Trust (select one)
  - [ ] Impress/Declare/Create
  - [ ] Reformation
- [ ] Will (select one)
  - [ ] Construe
  - [ ] Contested

**MISCELLANEOUS**
- [ ] Amend Death Certificate
- [ ] Appointment (select one)
  - [ ] Church Trustee
  - [ ] Conservator of Peace
  - [ ] Marriage Celebrant
- [ ] Approval of Transfer of Structured Settlement
- [ ] Bond Forfeiture Appeal
- [ ] Declaratory Judgment
- [ ] Declare Death
- [ ] Driving Privileges (select one)
  - [ ] Reinstatement pursuant to § 46.2-427
  - [ ] Restoration – Habitual Offender or 3rd Offense
- [ ] Expungement
- [ ] Firearms Rights – Restoration
- [ ] Forfeiture of Property or Money
- [ ] Freedom of Information
- [ ] Injunction
- [ ] Interdiction
- [ ] Interrogatory
- [ ] Judgment Lien-Bill to Enforce
- [ ] Law Enforcement/Public Official Petition
- [ ] Name Change
- [ ] Referendum Elections
- [ ] Sever Order
- [ ] Taxes (select one) **
  - [ ] Correct Erroneous State/Local
  - [ ] Delinquent
- [ ] Vehicle Confiscation
- [ ] Voting Rights – Restoration
- [X] Other (please specify)

Motion to Compel

[ ] Damages in the amount of $ ..................................... are claimed.

07/27/2018
DATE

[ ] PLAINTIFF   [ ] DEFENDANT   [X] ATTORNEY FOR   [X] PLAINTIFF [ ] DEFENDANT

Brad D. Weiss (VSB #22389)
PRINT NAME

Charapp & Weiss, LLP, 8180 Greensboro Dr., Suite 1000
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

McLean, VA 22102

brad.weiss@cwattorneys.com
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

FORM CC-1416 (MASTER) PAGE ONE 07/16

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

IN THE CIRCUIT COURT FOR HAMPTON, VIRGINIA

PRIORITY AUTOMOTIVE HAMPTON, INC. )     **PART 2**
    t/a PRIORITY HONDA HAMPTON )
    4155 W. Mercury Blvd. )
    Hampton, VA 23666 )
                )
         Plaintiff, )
                )
v.                 ) Case No. CL 18-1802
                )
JEREMIAH W. MIMS )
    3952 St. Erics Turn )
    Williamsburg, VA 23185 )

## PLAINTIFF'S MOTION TO COMPEL ARBITRATION

Plaintiff Priority Automotive Hampton, Inc. t/a Priority Honda Hampton ("Plaintiff" or "Priority"), by and through undersigned counsel, and pursuant to Virginia Code §§ 8.01-581.02 and 8.01-581.013, submits to this Honorable Court its Motion to Compel Arbitration, and states the following in support thereof:

### PARTIES

1.    Plaintiff is a Virginia corporation engaged in the business of selling and servicing motor vehicles, with its dealership located at 4115 W. Mercury Blvd., Hampton, VA 23666. Plaintiff's dealership is located in Hampton County, VA.

2.    Defendant Jeremiah W. Mims ("Defendant" or "Mims") is an individual residing at 3952 St. Erics Turn, Williamsburg, VA 23185.

### JURISDICTION AND VENUE

3.    This Court has jurisdiction pursuant to Virginia Code §§ 8.01-328.1(A)(2) and 8.01-581.014 because Plaintiff and Defendant entered into a contract for the purchase of a vehicle at

Plaintiff's dealership located in Hampton, Virginia and Defendant took delivery of the vehicle at that same location.

4.     Venue is proper pursuant to Va. Code §§ 8.01-262(1), (3), (4), and 8.01-581.015 because the Agreement to Arbitrate provides that "arbitration shall take place in the locality in which the dealer is located," and the Plaintiff's dealership is located in Hampton, Virginia.

### FACTUAL ALLEGATIONS

5.     On or about May 1, 2018, Defendant visited Plaintiff's dealership to purchase a used 2018 Honda Odyssey, VIN # 5FNRL6H77JB051484 (hereinafter referred to as the "Honda Purchase").

6.     During his visit at Plaintiff's dealership, Defendant reviewed and signed a Worksheet identifying that the trade allowance value on his 2016 Chevrolet Colorado, VIN # 1GCGTCE36G1230429 (hereinafter referred to as the "Trade-in Vehicle") agreed upon by and between Plaintiff and Defendant was $28,000. *See* Priority Worksheet, attached hereto as Ex. A[1].

7.     Also during his visit at Plaintiff's dealership, Defendant reviewed and signed a Guarantee of Title wherein the parties agreed that the Trade-in Vehicle would be "furnished to Priority, free and clear of all encumbrances within ten (10) days of the dated hereof [May 1, 2018] and in consideration of a trade allowance of $28,000.00." The Guarantee of Title further provides that Defendant agreed that "[i]f said title is not furnished, I ... do hereby agree to pay Priority the amount of $28,000 in cash." *See* Guarantee of Title, attached hereto as Ex. B.

8.     During his visit at Plaintiff's dealership, Defendant entered into a Buyer's Order for the Honda Purchase.  In doing so, he traded in his Trade-in Vehicle as consideration for the Honda Purchase.  However, unbeknownst to Plaintiff and contrary to Defendant's acknowledgment and agreement in the Worksheet and Guarantee of Title, the Buyer's Order inadvertently listed the

---

[1] Undersigned counsel has redacted the social security number, telephone numbers and email address of Defendant where they appear in the exhibits attached hereto.

trade allowance value at $56,000. *See* Buyer's Order, attached hereto as Ex. C. Defendant also signed a Retail Installment Sales Contract (hereinafter referred to as the "RISC") to finance the Honda Purchase. *See* RISC, attached hereto as Ex. D.

9.     The Buyer's Order provides that "The front and back of this buyer's order, *along with other documents signed by Purchaser(s)* in connection with this order, *comprise the entire agreement between the parties* affecting this purchase." *See* Ex. C. (Emphasis added). Indeed, the Worksheet and Guarantee of Title are documents reviewed and signed by Defendant and comprise the agreement between Plaintiff and Defendant.

10.     The Buyer's Order also provides that "[p]urchaser agrees to cooperate and execute all documents required by Dealer to complete the sale/lease of a vehicle... In the event the Buyer's Order must be retyped or changed, Purchaser agrees to execute a new Buyer's Order so long as there is not a material change in the terms agreed upon." *See* Ex. C.

11.     After Defendant took delivery of the Honda Purchase, Plaintiff became aware of the mutual mistake of fact by the parties agreeing to the trade allowance value of the Trade-in Vehicle for a value of $56,000 in the Buyer's Order instead of the previously agreed trade-in allowance value of $28,000 in the Worksheet and Guarantee of Title. Plaintiff contacted Defendant by telephone regarding the mutual mistake and asked Defendant to return to correct the paperwork. Defendant refused.

12.     On or about May 23, 2018, Plaintiff sent a letter to Defendant informing him that Priority was rescinding the Buyer's Order and RISC due to the mutual mistake of fact. The letter also informed Defendant that upon his return of the 2018 Honda Odyssey (Honda Purchase), he could pick up his 2016 Chevrolet Colorado (Trade-in Vehicle). *See* May 23, 2018 Ltr. to Defendant,

3

attached hereto as Ex. E.  Because Plaintiff rescinded the Buyer's Order and RISC, Defendant's financing was never completed.

13.     Defendant emailed Plaintiff in response to May 23, 2018 letter refusing to correct the mutual mistake of fact.  On or about June 7, 2018, Defendant sent a cashier's check to Plaintiff made payable to Priority Honda Finance in the amount of $460.00 claiming it to be his first payment on the Honda Purchase.

14.     On or about June 12, 2018, Plaintiff sent another letter to Defendant regarding the rescission of both the Buyer's Order and RISC.  Plaintiff further notified Defendant that it would not accept or cash the June 2018 cashier's check.  Plaintiff further notified Defendant that as a result of the mutual mistake of fact and Defendant's refusal to cooperate with Plaintiff to correct it, it would not process the payoff on Defendant's 2016 Chevrolet Colorado (Trade-in Vehicle) and as such, he would remain responsible and obligated to make the monthly payments owed on that vehicle.  The letter further notified Defendant that Plaintiff would move forward to invoke mediation and arbitration through the Better Business Bureau (hereinafter referred to as the "BBB") as set forth in the Buyer's Order.  *See* June 12, 2018 Ltr. to Defendant, attached hereto as Ex. F.  Once again, Defendant did not respond to Plaintiff's June 12, 2018 letter.

15.     On June 20, 2018, undersigned counsel contacted the BBB to initiate the mediation and arbitration process pursuant to the Buyer's Order.  *See* June 20, 2018 Ltr. To the BBB, attached hereto as Ex. G.

16.     On July 12, 2018, undersigned counsel received an email notification from Valerie Butts, Director of Dispute Resolution of the BBB stating that she was able to speak with Defendant on the phone and that he refused to mediate or arbitrate the dispute between he and Plaintiff.  She further informed undersigned counsel that the BBB cannot take any further action until a court

orders Defendant to adhere to the mediation and arbitration provisions of the Buyer's Order. *See* July 12, 2018 Email from V. Butts of the BBB, attached hereto as Ex H.

17.     On or about July 16, 2018, Plaintiff received a second cashier's check from Defendant in the amount of $460.00. As with the first cashier's check, Plaintiff did not cash the check and does not accept the payment.

## DEMAND FOR ARBITRATION
### (Pursuant to Va. Code § 8.01-581.02)

18.     Plaintiff incorporates herein paragraphs 1 through 17 as if fully restated herein.

19.     Included in the Buyer's Order, are two provisions: Agreement to Mediate Disputes and Agreement to Arbitrate Disputes. Both provisions are conspicuous and appear directly above Defendant's signature line. *See* Ex. C. Defendant's signature to the Buyer's Order makes clear he agreed to those provisions.

20.     The Agreement to Mediate Disputes provides for mediation with the BBB and states that

> The Purchaser(s) and Dealer, (collectively, the "Parties") agree that should any Dispute (as defined below) arise between the Parties, the Parties will first attempt to resolve the Dispute through nonbinding mediation conducted by a neutral third party prior to instituting any other legal action. Either of the Parties may initiate the mediation by contact the organization named here.

*See* Ex. C.

21.     The Agreement to Arbitrate Disputes also provides for arbitration with the BBB and states that

> Purchaser(s) and Dealer agree that if any Dispute (as defined below) arises, the Dispute will be resolved by binding arbitration by a single arbitrator under the applicable rules of the alternative dispute resolution agency named here, with that arbitrator rendering a written decision with separate findings of fact and conclusions of law. An award by the arbitrator shall be final and binding on all parties to the proceeding. The arbitrator shall apply the substantive law of the Commonwealth of Virginia and the arbitration shall take

place in the locality in which Dealer is located. All arbitration costs and expenses shall be borne as determined by the arbitrator. Judgment on an award may be entered by either party in the highest local, state, or federal court, or before any administrative body. If any portion of this agreement is found to be unenforceable, the remainder of the agreement shall remain effective. ***This Arbitration Agreement will survive payment of Purchaser(s)' obligations in connection with this transaction and any termination, cancellation or performance of the transaction between Purchaser(s) and Dealer.***

*See* Ex. C. (Emphasis added).

22.     The Buyer's Order defines the term "dispute" as follows

***A Dispute is*** any question as to whether something must be arbitrated, as well as any allegation concerning a violation of state or federal statute that may be the subject of binding arbitration, ***any purely monetary claim greater than $1,000.00 in the aggregate whether contract, tort, or other, arising from the negotiation of and terms of the Buyer's Order***, any service contract or insurance product, or any retail installment sale contract or lease (but this arbitration provision does not apply to and shall not be binding on any assignee thereof); provided, however, that your failure to provide consideration to be paid by you (including your failure to pay a note, a dishonored check, failure to provide a trade title, or failure to pay deficiency resulting from additional payoff on trade) as well as our right to retake possession of the vehicle pursuant to this Buyer's Order shall not be considered a Dispute and shall not be subject to arbitration.

*See* Ex. C. (Emphasis added).

23.     The Agreement to Arbitrate Disputes in the Buyer's Order is an agreement described in Va. Code § 8.01-581.01.

24.     Indeed, Plaintiff notified Defendant on or about June 12, 2018 that it intended to invoke mediation and arbitration. Plaintiff did, in fact, initiate mediation and arbitration before the BBB on June 20, 2018. Defendant made clear to the BBB his refusal to participate in mediation or arbitration by telephone discussion with the BBB on July 12, 2018. The July 12, 2018 email from

the BBB to undersigned counsel, the BBB did not indicate that Defendant disputed the existence of the agreement to arbitrate.

25.    Pursuant to Va. Code § 8.01-581.02, "[o]n application of a party showing an agreement described in § 8.01-581.01, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration."

WHEREFORE, the Plaintiff Priority Automotive Hampton, Inc. t/a Priority Honda Hampton respectfully requests that this Honorable Court order Defendant Jeremiah W. Mims to participate in binding arbitration before the Better Business Bureau as described in the May 1, 2018 Buyer's Order by and between Plaintiff and Defendant. Plaintiff further requests such other equitable relief, including attorney's fees and costs, that this Honorable Court deems appropriate.

Dated: July 27, 2018                        Respectfully submitted,

Brad D. Weiss (VSB No. 22389)
Zainab Y. Chaudhri (VSB No. 86139)
CHARAPP & WEISS, LLP
8180 Greensboro Drive, Suite 1000
McLean, Virginia 22102
(703) 564-0220 (office)
(703) 564-0221 (facsimile)
brad.weiss@cwattorneys.com
zainab.chaudhri@cwattorneys.com
*Counsel for Plaintiff Priority Automotive Hampton, Inc.*
*d/b/a Priority Honda Hampton*

Filed in the Clerk's office this 30 day
of July , 20 18

| 049 | Writ Tax | 5 |
| 104 | Sp Exp-Tag/Cwp | |
| 123 | Legal Aid | 9 |
| 170 | Court Tech Fund | 10 |
| 229 | CHMF | 3 |
| 106 | Tech Trust Fund | 3 |
| 206 | Sheriff | |
| 147 | Indigent Assistance | 2 |
| 219 | Law Library | |
| 304 | Clerk Civil Fee | 50 |
| 237 | Miscellaneous | |
| 509 | Other | |
| | TOTAL | 84 |

LINDA BATCHELOR SMITH, CLERK

_____ Deputy Clerk

7



Date: **05/01/2018  2:48:24 PM**
Salesperson: **Nick Nichols The Internet Team**
Manager: **Terry Whitehurst**

## FOR INTERNAL USE ONLY

| CUSTOMER | *Jeremiah Mims* | | Home Phone: | |
|---|---|---|---|---|
| Address : | *3952 ST ERICS TURN*<br>*WILLIAMSBURG, VA  23185*<br>*CHARLES CITY CO* | | Work Phone: | |
| E-Mail : | | | Cell Phone: | |

**VEHICLE**

| Stock #: *UP21940* | New / Used : | VIN : *5FNRL6H77JB051484* | Mileage : *3717* |
|---|---|---|---|
| Vehicle : *2018 Honda Odyssey* | | Color : *Modern Steel Me* | |
| Type : *EX-L Passenger* | | | |

**TRADE IN**

| | *1GCGTCE36G1230429* | | *30,723* |
|---|---|---|---|
| Payoff : *$.00* | VIN : | Mileage : | |
| Vehicle : *0* | *2016 Chevrolet Colorado* | *Black [Black]*<br>Color : | |
| Type : | *LT 4x4 Crew Cab 5 ft. box 128.3 in. WB* | | |

| | | |
|---|---|---|
| Selling Price | | 37,995.00 |
| Discount | | 3,995.00 |
| Adjusted Price | | 34,000.00 |
| | | |
| | | |
| | | |
| Total Purchase | | 34,000.00 |
| Trade Allowance | | 28,000.00 |
| Trade Difference | | 6,000.00 |
| Certified Prep Fee | | 685.15 |
| Processing Fee | | 699.00 |
| Tax | | 1,539.21 |
| Non Tax Fees | | 22.00 |
| Trade Payoff | | |
| Cash Deposit | | |
| Balance | | 8,945.36 |



| ☐ Priority Acura | ☐ Priority Toyota | ☐ Priority Hyundai |
|---|---|---|
| 757-523-1700 | 757-388-5000 | 757-877-9995 |
| 757-424-5059 (fax) | 757-388-5077 (fax) | 757-877-0584 (fax) |
| 1-800-235-3603 | 1-800-238-6552 | 1-800-413-7903 |
| 1701 South Military Highway | 1800 Greenbrier Parkway | 12872 Jefferson Avenue |
| Chesapeake, VA 23320 | Chesapeake, VA 23320 | Newport News, VA 23608 |
| ☐ Priority Chevrolet | ☐ Priority Toyota Richmond | |
| 757-424-1811 | 804-526-2811 | |
| 757-424-2446 (fax) | 804-526-8895 (fax) | |
| 1-800-235-8130 | 1-800-748-0908 | |
| 1495 South Military Highway | 910 Boulevard | |
| Chesapeake, VA 23320 | Colonial Heights, VA 23834 | |

# GUARANTEE OF TITLE

I or We _____ **Jeremiah Mims** _____ , the undersigned, hereby

warrant and guarantee a title to the following described vehicle:

Year: **2016**   Make: **Chevrolet**   Model: **Colorado**

with Vehicle Identification Number: **1GCGTCE36G1230429** , to be furnished

to Priority, free and clear of all encumbrances within ten (10) days of the dated hereof and in

consideration of a trade allowance of $: *28,000·00* .

It is further agreed as follows:

If said title is not furnished, I or we do hereby agree to pay Priority the amount of

$ *28,000 · 00* in cash. The undersigned, for value received, hereby further agrees that

upon a non-performance of any liabilities of the above mentioned or upon failure of the

undersigned forthwith, with or without notice, to furnish additional securities satisfactory to the

holder, in case of a decline or aforesaid, then in any such case the amount of $ _____

becomes due and payable and the maker(s) and endorser(s) of this instrument hereby waive

protest and the benefit of any exemption under the Homestead of Bankrupt laws as to this debt,

and agree to all expenses incurred in collecting same, inclusing ten percent (10%) attorney's

fees in case the above stated amount is not paid when due and on demand.

Signature _____   Date ____ **05/01/2018** ____

Signature _____   Date _____

**PRIORITY Honda HAMPTON**

4115 W. Mercury Blvd.
Hampton, VA 23666
www.priorityauto.com
(757) 838-1252

Deal # : 23075
Customer # : 89742

STOCK NO. UP21940

DATE OF SALE **05/01/2018**

| PURCHASER'S NAME | JEREMIAH W MIMS | HOME ADDRESS | 3952 ST ERICS TURN |
|---|---|---|---|
| CO-PURCHASER'S NAME | | CITY, STATE, ZIP | WILLIAMSBURG VA 23185 |
| | | COUNTY | CHARLES CITY |

PLEASE ENTER MY ORDER FOR THE FOLLOWING:

☐ NEW   ☒ USED   ☐ DEMO

E-MAIL ADDRESS

HOME PHONE / BUS. PHONE **757/856-2056**

| YEAR | MAKE | MODEL | TYPE/DOORS | COLOR |
|---|---|---|---|---|
| 2018 | HONDA | ODYSSEY | | GY |

| MILEAGE | VIN | IN SERVICE DATE |
|---|---|---|
| 3781 | 5 F N R L 6 H 7 7 J B 0 5 1 4 8 4 | |

| PRICE INCLUDING FREIGHT, HANDLING & DELIVERY | | 34685.15 |
|---|---|---|

**IF THIS BUYERS ORDER IS FOR A NEW VEHICLE WITH MORE THAN 750 MILES PLEASE READ THIS NOTICE.**

Notice: This new motor vehicle has accumulated mileage in excess of 750 miles as the result of use as a demonstrator and/or as the result of delivery to a prior prospective purchaser who never took title to it and who returned it.

| | | 150.00 |
|---|---|---|
| | | N/A |
| TOTAL PURCHASE PRICE | | 34835.15 |
| PROCESSING FEE FOR CONSUMER SERVICES | | 699.00 |
| TITLE TAX | | 1468.44 |
| DEALER'S BUSINESS LICENSE TAX | | N/A |

I, JEREMIAH W MIMS  JEREMIAH W MIMS is a legally binding contract to purchase and the partial payment submitted in this contract is not refundable unless the dealer cannot deliver within _____ days from the date 05/01/2018 I therefore acknowledge that cancellation or refusal to accept delivery of the vehicle ordered will constitute forfeiture of the $ _____ partial payment to purchase as damages to the dealer. I further agree to take delivery of ordered vehicle within 72 hours upon notification of arrival, or said vehicle will be considered available for sale and the initial payment to purchase be forfeited. I fully understand and accept the above conditions. This order not valid unless signed and accepted by Dealer or his authorized representative.

Signed _____

| | PURCHASER'S ON-LINE SYSTEMS FILING FEE | 10.00 |
|---|---|---|
| OLF | | |
| LICENSE FEE ____ 2.00  TITLE FEE 10.00 | | 12.00 |
| TOTAL DELIVERED PRICE | | 37024.59 |
| PAYMENT: ☐ CASH ☐ PC ☐ CC ☐ OTHER   (1) | | N/A |
| ALLOWANCE FOR USED CAR TRADE-IN AS APPRAISED | 56000 00 | |

| LESS BALANCE OWING TO - USAA | (PURCHASER RESPONSIBLE FOR) PAYOFF ACCURACY. | APPROXIMATELY | 46170 28 | |
|---|---|---|---|---|

**FOR "AS IS" SALE ONLY: I UNDERSTAND THAT THIS VEHICLE IS BEING SOLD "AS IS" WITH ALL FAULTS AND IS NOT COVERED BY ANY DEALER WARRANTY. I UNDERSTAND THAT THE DEALER IS NOT REQUIRED TO MAKE ANY REPAIRS AFTER I BUY THIS VEHICLE. I WILL HAVE TO PAY FOR ANY REPAIRS THIS VEHICLE WILL NEED. (SEE #15 ON REVERSE SIDE)**

DATE _____   SIGNATURE _____

| EQUITY ON TRADE-IN   (2) | 9829.72 |
|---|---|
| ADDITIONAL DOWN PAYMENT ON DELIVERY   (3) | N/A |
| | N/A   (4) |

| DESCRIPTION OF TRADE-IN | | | | TOTAL DOWN PAYMENT   (1+2+3+4) | 9829.72 |
|---|---|---|---|---|---|
| YEAR 2016 2000 | MAKE CHEVROLET | MODEL COLORADO | COLOR BLACK | TYPE/DOORS PU | EXTENDED SERVICE CONTRACT   2500.00 |
| MILEAGE 30723 0 | VIN 1 G C G T C E 3 6 G 1 2 3 0 4 2 9 | | TAG NO. | INCLUDING TAX OF   75.00 | 2575.00 |
| SALESPERSON NICK NICHOLS | | | | BALANCE DUE ON DELIVERY | 29769.87 |

The front and back of this buyer's order, along with other documents signed by Purchaser(s) in connection with this order, comprise the entire agreement between the parties affecting this purchase. No oral agreements or understandings shall be binding. Purchaser(s) acknowledges that he/she has been given the opportunity to review all documents prior to signing them and that he/she has not signed any documents in blank. By executing this Order, Purchaser(s) acknowledges he/she has read all of its terms and has received a fully completed copy. Purchaser(s) certifies he/she is 18 years of age or older. Until made effective, this order is not binding and Purchaser(s) may cancel and recover deposit.

## NO LIABILITY INSURANCE INCLUDED  UNLESS SPECIFICALLY INCLUDED

SECURITY INTEREST: Purchaser hereby grants Seller, its successors and assigns, a security interest in the motor vehicle, equipment and accessories to be purchased pursuant to this agreement, and such security interest shall remain in effect until all sums due hereunder have been paid in full.

IF YOU ARE FINANCING READ THIS NOTICE. YOU ARE PROPOSING TO ENTER INTO A RETAIL INSTALLMENT SALES CONTRACT WITH THE DEALER. PART OF YOUR CONTRACT INVOLVES FINANCING THE PURCHASE OF YOUR VEHICLE. IF YOU ARE FINANCING THIS VEHICLE AND THE DEALER INTENDS TO TRANSFER YOUR FINANCING TO A FINANCE PROVIDER SUCH AS A BANK, CREDIT UNION OR OTHER LENDER, YOUR VEHICLE PURCHASE DEPENDS ON THE FINANCE PROVIDER'S APPROVAL OF YOUR PROPOSED RETAIL INSTALLMENT SALES CONTRACT. IF YOUR RETAIL INSTALLMENT SALES CONTRACT IS APPROVED WITHOUT A CHANGE THAT INCREASES THE COST OR RISK TO YOU OR THE DEALER, YOUR PURCHASE CANNOT BE CANCELLED. IF YOUR RETAIL INSTALLMENT SALES CONTRACT IS NOT APPROVED THE DEALER WILL NOTIFY YOU VERBALLY OR IN WRITING. YOU CAN THEN DECIDE TO PAY FOR THE VEHICLE IN SOME OTHER WAY OR YOU OR THE DEALER CAN CANCEL YOUR PURCHASE. IF THE SALE IS CANCELLED, YOU NEED TO RETURN THE VEHICLE TO THE DEALER WITHIN 24 HOURS OF VERBAL OR WRITTEN NOTICE IN THE SAME CONDITION IT WAS GIVEN TO YOU, EXCEPT FOR NORMAL WEAR AND TEAR. ANY DOWN PAYMENT OR TRADE-IN YOU GAVE THE DEALER WILL BE RETURNED TO YOU. IF YOU DO NOT RETURN THE VEHICLE WITHIN 24 HOURS OF VERBAL OR WRITTEN NOTICE OF CANCELLATION, THE DEALER MAY LOCATE THE VEHICLE AND TAKE IT BACK WITHOUT FURTHER NOTICE TO YOU AS LONG AS THE DEALER FOLLOWS THE LAW AND DOES NOT CAUSE A BREACH OF THE PEACE WHEN TAKING THE VEHICLE BACK. IF THE DEALER DOES NOT RETURN YOUR DOWN PAYMENT AND ANY TRADE-IN WHEN THE DEALER GETS THE VEHICLE BACK IN THE SAME CONDITION IT WAS GIVEN TO YOU, EXCEPT FOR NORMAL WEAR AND TEAR, THE DEALER MAY BE LIABLE TO YOU UNDER THE VIRGINIA CONSUMER PROTECTION ACT.

IF YOU ARE LEASING THIS VEHICLE, THE SAME PROCEDURES, RIGHTS, AND OBLIGATIONS APPLICABLE TO TRANSACTIONS INVOLVING A RETAIL INSTALLMENT SALES CONTRACT STATED ABOVE APPLY TO THIS LEASE TRANSACTION.

AGREEMENT TO MEDIATE DISPUTES: Purchaser(s) and Dealer, (collectively, the "Parties") agree that should any Dispute (as defined below) arise between the Parties, the Parties will first attempt to resolve the Dispute through nonbinding mediation conducted by a neutral third party prior to instituting any other legal action. Either of the Parties may initiate the mediation by contacting the organization named here. The organization's Rules of Mediation shall determine the costs of the mediation services to be borne by each Party. Each Party will be responsible for its own expenses incurred in conjunction with the mediation, including any attorneys' fees. The mediation will be held in the locality where the Dealer is located unless the Parties agree otherwise.

Mediation Organization Name, Address and Telephone
Better Business Bureau
586 Virginian Drive
Norfolk, VA 23505
BBB # 757-531-1300
A CUSTOMER ASSISTANCE PROGRAM OF THE BETTER BUSINESS BUREAU
Member Hampton Roads

AGREEMENT TO ARBITRATE DISPUTES: Purchaser(s) and Dealer agree that if any Dispute (as defined below) arises, the Dispute will be resolved by binding arbitration by a single arbitrator under the applicable rules of the alternative dispute resolution agency named here, with that arbitrator rendering a decision.

| | | |
|---|---|---|
| PLEASE READ THIS NOTICE. | | N/A |
| Notice: This new motor vehicle has accumulated mileage in excess of 750 miles as the result of use as a demonstrator and/or as the result of delivery to a prior prospective purchaser who never took title to it and who returned it. | TOTAL PURCHASE PRICE | 34835.15 |
| | PROCESSING FEE FOR CONSUMER SERVICES | 699.00 |
| | TITLE TAX | 1468.44 |
| | DEALER'S BUSINESS LICENSE TAX | N/A |

JEREMIAH W MIMS   JEREMIAH W MIMS This is a legally binding contract to purchase and the partial payment submitted with this contract is not refundable unless the dealer cannot deliver within _____ days from the date; **05/01/2018** I therefore acknowledge that cancellation or refusal to accept delivery of the vehicle ordered will constitute forfeiture of the $ _____ partial payment to purchase as damages to the dealer. I further agree to take delivery of ordered vehicle within 72 hours upon notification of arrival, or said vehicle will be considered available for sale and the initial payment to purchase will be forfeited. I fully understand and accept the above conditions. This order not valid unless signed and accepted by Dealer or his authorized representative.

Signed _____

| | | |
|---|---|---|
| | PURCHASER'S ON-LINE SYSTEMS FILING FEE | 10.00 |
| OLF | | |
| LICENSE FEE **2.00**   TITLE FEE **10.00** | | 12.00 |
| | TOTAL DELIVERED PRICE | 37024.59 |
| PAYMENT: ☐ CASH ☐ PC ☐ CC ☐ OTHER _____ (1) | | N/A |
| ALLOWANCE FOR USED CAR TRADE-IN AS APPRAISED | | 56000 00 (1) |

| | | | |
|---|---|---|---|
| LESS BALANCE OWING TO - **USAA** | ( PURCHASER RESPONSIBLE FOR ) ( PAYOFF ACCURACY. ) | APPROXIMATELY | 46170 28 |

| | | | |
|---|---|---|---|
| FOR "AS IS" SALE ONLY: I UNDERSTAND THAT THIS VEHICLE IS BEING SOLD "AS IS" WITH ALL FAULTS AND IS NOT COVERED BY ANY DEALER WARRANTY. I UNDERSTAND THAT THE DEALER IS NOT REQUIRED TO MAKE ANY REPAIRS AFTER I BUY THIS VEHICLE. I WILL HAVE TO PAY FOR ANY REPAIRS THIS VEHICLE WILL NEED. (SEE #15 ON REVERSE SIDE) | EQUITY ON TRADE-IN (2) | | 9829.72 |
| | ADDITIONAL DOWN PAYMENT ON DELIVERY (3) | | N/A |
| DATE _____   SIGNATURE _____ | | (4) | N/A |

| DESCRIPTION OF TRADE-IN | | | | | | TOTAL DOWN PAYMENT (1+2+3+4) | | 9829.72 |
|---|---|---|---|---|---|---|---|---|
| YEAR **2016** **2000** | MAKE **CHEVROLET** | MODEL **COLORADO** | COLOR **BLACK** | TYPE/DOORS **PU** | | EXTENDED SERVICE CONTRACT **2500.00** | | |
| MILEAGE **30723 0** | VIN **1** G C G T C E 3 6 G 1 2 3 0 4 2 9 | | | | TAG NO. | INCLUDING TAX OF **75.00** | | 2575.00 |
| SALESPERSON **NICK NICHOLS** | | | | | | BALANCE DUE ON DELIVERY | | 29769.87 |

The front and back of this buyer's order, along with other documents signed by Purchaser(s) in connection with this order, comprise the entire agreement between the parties affecting this purchase. No oral agreements or understandings shall be binding. Purchaser(s) acknowledges he/she has been given the opportunity to review all documents prior to signing them and that he/she has not signed any documents in blank. By executing this Order, Purchaser(s) acknowledges he/she has read all of its terms and has received a fully completed copy. Purchaser(s) certifies he/she is 18 years of age or older. Until made effective, this order is not binding and Purchaser(s) may cancel and recover deposit.

# NO LIABILITY INSURANCE INCLUDED  UNLESS SPECIFICALLY INCLUDED

SECURITY AGREEMENT: Purchaser hereby grants Seller, its successors and assigns, a security interest in the motor vehicle, equipment and accessories to be purchased pursuant to this agreement, and such security interest shall remain in effect until all sums due hereunder have been paid in full.

IF YOU ARE FINANCING THIS VEHICLE PLEASE READ THIS NOTICE. YOU ARE PROPOSING TO ENTER INTO A RETAIL INSTALLMENT SALES CONTRACT WITH THE DEALER. PART OF YOUR CONTRACT INVOLVES FINANCING THE PURCHASE OF YOUR VEHICLE. IF YOU ARE FINANCING THIS VEHICLE AND THE DEALER INTENDS TO TRANSFER YOUR FINANCING TO A FINANCE PROVIDER SUCH AS A BANK, CREDIT UNION OR OTHER LENDER, YOUR VEHICLE PURCHASE DEPENDS ON THE FINANCE PROVIDER'S APPROVAL OF YOUR PROPOSED RETAIL INSTALLMENT SALES CONTRACT. IF YOUR RETAIL INSTALLMENT SALES CONTRACT IS APPROVED WITHOUT A CHANGE THAT INCREASES THE COST OR RISK TO YOU OR THE DEALER, YOUR PURCHASE CANNOT BE CANCELLED. IF YOUR RETAIL INSTALLMENT SALES CONTRACT IS NOT APPROVED THE DEALER WILL NOTIFY YOU VERBALLY OR IN WRITING. YOU CAN THEN DECIDE TO PAY FOR THE VEHICLE IN SOME OTHER WAY OR YOU OR THE DEALER CAN CANCEL YOUR PURCHASE. IF THE SALE IS CANCELLED, YOU NEED TO RETURN THE VEHICLE TO THE DEALER WITHIN 24 HOURS OF VERBAL OR WRITTEN NOTICE IN THE SAME CONDITION IT WAS GIVEN TO YOU, EXCEPT FOR NORMAL WEAR AND TEAR. ANY DOWN PAYMENT OR TRADE-IN YOU GAVE THE DEALER WILL BE RETURNED TO YOU. IF YOU DO NOT RETURN THE VEHICLE WITHIN 24 HOURS OF VERBAL OR WRITTEN NOTICE OF CANCELLATION, THE DEALER MAY LOCATE THE VEHICLE AND TAKE IT BACK WITHOUT FURTHER NOTICE TO YOU AS LONG AS THE DEALER FOLLOWS THE LAW AND DOES NOT CAUSE A BREACH OF THE PEACE WHEN TAKING THE VEHICLE BACK. IF THE DEALER DOES NOT RETURN YOUR DOWN PAYMENT AND ANY TRADE-IN WHEN THE DEALER GETS THE VEHICLE BACK IN THE SAME CONDITION IT WAS GIVEN TO YOU, EXCEPT FOR NORMAL WEAR AND TEAR, THE DEALER MAY BE LIABLE TO YOU UNDER THE VIRGINIA CONSUMER PROTECTION ACT.

IF YOU ARE LEASING THIS VEHICLE, THE SAME PROCEDURES, RIGHTS, AND OBLIGATIONS APPLICABLE TO TRANSACTIONS INVOLVING A RETAIL INSTALLMENT SALES CONTRACT STATED ABOVE APPLY TO THIS LEASE TRANSACTION.

| | |
|---|---|
| AGREEMENT TO MEDIATE DISPUTES: The Purchaser(s) and Dealer, (collectively, the "Parties") agree that should any Dispute (as defined below) arise between the Parties, the Parties will first attempt to resolve the Dispute through nonbinding mediation conducted by a neutral third party prior to instituting any other legal action. Either of the Parties may initiate the mediation by contacting the organization named here. The organization's Rules of Mediation then in effect shall determine the costs of the mediation services to be borne by each Party. Each Party will be responsible for its own expenses incurred in conjunction with the mediation, including any attorneys' fees. The mediation will be held in the locality where the Dealer is located unless the Parties agree otherwise. | Mediation Organization Name, Address and Telephone Better Business Bureau 586 Virginian Drive Norfolk, VA 23505 BBB # 757-531-1300 A CUSTOMER ASSISTANCE PROGRAM OF THE BETTER BUSINESS BUREAU |

AGREEMENT TO ARBITRATE DISPUTES: Purchaser(s) and Dealer agree that if any Dispute (as defined below) arises, the Dispute will be resolved by binding arbitration by a single arbitrator under the applicable rules of the alternative dispute resolution agency named here, with that arbitrator rendering a written decision with separate findings of fact and conclusions of law. An award by the arbitrator shall be final and binding on all parties to the proceeding. The arbitrator shall apply the substantive law of the Commonwealth of Virginia and the arbitration shall take place in the locality in which Dealer is located. All arbitration costs and expenses shall be borne as determined by the arbitrator. Judgment on an award may be entered by either party in the highest local, state, or federal court, or before any administrative body. If any portion of this agreement is found to be unenforceable, the remainder of the agreement shall remain effective. This Arbitration Agreement will survive payment of Purchaser(s)' obligations in connection with this transaction and any termination, cancellation or performance of the transaction between Purchaser(s) and Dealer.

| | |
|---|---|
| DISPUTE DEFINED: A Dispute is any question as to whether something must be arbitrated, as well as any allegation concerning a violation of state or federal statute that may be the subject of binding arbitration, any purely monetary claim greater than $1,000.00 in the aggregate whether contract, tort, or other, arising from the negotiation of and terms of the Buyer's Order, any service contract or insurance product, or any retail installment sale contract or lease (but this arbitration provision does not apply to and shall not be binding on any assignee thereof); provided, however, that your failure to provide consideration to be paid by you (including your failure to pay a note, a dishonored check, failure to provide a trade-title, or failure to pay deficiency resulting from additional payoff on trade) as well as our right to retake possession of the vehicle pursuant to this Buyer's Order shall not be considered a Dispute and shall not be subject to arbitration. THE PARTIES UNDERSTAND THAT THEY ARE WAIVING THEIR RIGHTS TO JURY TRIAL OF ALL DISPUTES BETWEEN THEM NOT SPECIFICALLY EXEMPTED FROM ARBITRATION IN THE ARBITRATION AGREEMENT. | Alternative Dispute Resolution Agency Name and Address Better Business Bureau 586 Virginian Drive Norfolk, VA 23505 BBB # 757-531-1300 A CUSTOMER ASSISTANCE PROGRAM OF THE BETTER BUSINESS BUREAU |

Approved _____
Dealer or Authorized Representative
This Order is not valid unless signed and accepted by the Dealer or his authorized representative.

Date  **05/01/2018**

Signed (1) _____
Purchaser

Social Security Number _____

(2) _____
Purchaser

Social Security Number _____

## ADDITIONAL CONDITIONS OF SALE

It is further understood and agreed that the order on the reverse side hereof is subject to the following terms and conditions:

1. **New Vehicle Sales** - If the manufacturer/distributor changes the suggested retail price of equipment or ordered vehicle, Dealer may change the price accordingly. If price is increased by Dealer, Purchaser may, if dissatisfied therewith, cancel this order in which event if a used motor vehicle has been traded in as part of the consideration for such new motor vehicle, used motor vehicle shall be returned to Purchaser upon payment of a reasonable charge for storage, repairs and reconditioning (if any) or, if such used motor vehicle has been previously sold by Dealer, the amount received therefor, less a selling commission of 15% and any expense incurred in storing, insuring, conditioning or advertising said used motor vehicle for sale, shall be returned to Purchaser. If the manufacturer/distributor substantially modifies the ordered vehicle design/equipment or does not manufacture or distribute an ordered vehicle, this agreement is voidable by either party upon ten (10) days written notice. Dealer shall only be obligated to return deposit without interest, trade-in vehicle or the cash price of the trade-in vehicle as set forth above at Dealer's discretion.

2. **Trade-In Vehicles** - If the used motor vehicle which has been traded in as part of the consideration for the motor vehicle ordered hereunder is not to be delivered to Dealer until delivery of such motor vehicle, the used motor vehicle may be reappraised at that time by Dealer and such reappraised value shall determine the allowance made for such used motor vehicle. Trade-in vehicle shall be delivered in same condition as appraised with same equipment. Purchaser guarantees to deliver title free and clear of liens or encumbrances within five (5) days of signing this agreement. If pay-off on Purchaser's trade-in is more than estimated herein, Purchaser shall immediately pay said difference and, if lower, Dealer will return said amount. If a trade-in, title or equipment is not delivered as agreed, Dealer may cancel this purchase order and upon demand receive from Purchaser payment of a pay-off on trade-in and/or seek remedies as set forth in Paragraph 3 herein. At Dealer's discretion. Purchaser assumes risk of loss to trade-in vehicle until title reassigned.

3. **Default - New & Used Vehicle** - In the event of default, which includes, but is not limited to (1) Purchaser's check is returned without payment; (2) promissory note not timely paid; (3) trade-in vehicle not delivered to dealer; (4) trade-in title not delivered unencumbered; (5) failure to cooperate and sign documents; and/or (6) failure or refusal of Purchaser to accept delivery of the motor vehicle ordered hereunder, Dealer shall be entitled, at its discretion, to the choice of remedies in this Agreement, which may be used separately or together, including (1) cancel purchase order; (2) repossess vehicle without notice; (3) rescind the sales transaction; (4) seek collection for amounts due; and/or (5) retain as liquidated damages any cash down payment made by Purchaser, and in the event a used motor vehicle has been traded in as a part of the consideration for the motor vehicle ordered hereunder, to sell such used motor vehicle and reimburse himself out of the proceeds of such sale for any actual damages suffered by Dealer as a result of such default. Dealer shall be entitled to recover from Purchaser for an event of default costs for repossession/collection, reasonable interest plus reasonable attorney's fees. Any waiver of all or part of a remedy is not a continuing waiver.

4. **Dealer's Right To Terminate Agreement - New & Used Vehicles** - Dealer may cancel this Agreement if: (1) Purchaser's credit application is not approved by financing source and/or approved on terms acceptable to Dealer; (2) on event of default as defined above; (3) any statement or representation by Purchaser is not accurate or truthful; or (4) Dealer cannot deliver vehicle for any reason set forth in Paragraph 1. Dealer's only obligation or liability shall be as stated in Paragraph 1.

5. **Conditions Beyond Dealer's Control** - Dealer shall not be liable for failure to deliver or delay in delivering the motor vehicle covered by this order where such failure or delay is due, in whole or part, to any cause beyond the control or without the fault or negligence of dealer.

6. **Taxes** - Unless otherwise expressly provided, the Total Purchase Price for the ordered vehicle specified on the reverse side hereof does not include any taxes imposed by any governmental authority with respect to such vehicle prior to or at the time of delivery of such vehicle to the Purchaser, the Purchaser assumes and agrees to pay any and all such taxes, and any and all other taxes except income taxes, imposed on or incidental to the transaction covered by this order, regardless of who may have the primary tax liability.

7. **Documents** - Purchaser agrees to cooperate and execute all documents required by Dealer to complete the sale/lease of a vehicle. Default provisions of paragraph 3 apply for failure. In the event the Buyer's Order must be retyped or changed, Purchaser agrees to execute a new Buyer's Order so long as there is not a material change in the terms agreed upon.

8. **Warranty Limitations** - DEALER HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, EXCEPT IF DEALER PROVIDES A WRITTEN WARRANTY OR AT TIME OF SALE OR WITHIN 90 DAYS THEREAFTER ENTERS INTO A SERVICE CONTRACT, IN WHICH CASE ANY IMPLIED WARRANTIES SHALL BE LIMITED TO THE DURATION OF SAID WRITTEN WARRANTY OR SERVICE CONTRACT. PURCHASER SHALL NOT BE ENTITLED UNDER ANY CIRCUMSTANCES TO RECOVER FROM DEALER ANY CONSEQUENTIAL DAMAGES, DAMAGES TO PROPERTY, DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFITS OR INCOME OR ANY OTHER INCIDENTAL DAMAGES. THE DEALER NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF SUCH VEHICLE. THIS DISCLAIMER IN NO WAY AFFECTS THE TERMS OF THE MANUFACTURER'S WARRANTY. FOR NEW AND USED VEHICLES TO WHICH ANY MANUFACTURER'S WARRANTY APPLIES, SAID WARRANTIES ARE THE MANUFACTURER'S WARRANTIES ONLY AND NOT THE DEALER'S.

9. **Cash Transaction** - In the case of a cash transaction, title to the ordered vehicle shall not pass to the Purchaser until the Dealer shall have received, in cash, the full amount of the Unpaid Balance. However, the Dealer may, at its discretion, pass title to the ordered vehicle prior to receipt of the full amount of the Unpaid Balance. The passing of title prior to receipt of the full cash amount of Unpaid Balance shall not relieve Purchaser's obligation to pay, in full, the Unpaid Balance as shown on the reverse side hereof. In the event that the transaction covered by the order is not a cash transaction, Purchaser agrees to execute, before or at the time of delivery of the ordered vehicle, such conditional sales contracts and other instruments as may be required by Dealer.

10. **Financing or Leasing** - If Purchaser is financing this transaction or leasing the vehicle, the transaction is conditioned upon approval of Purchaser's retail installment sale contract or lease by a financial source on terms acceptable to the Dealer. If the retail installment sale contract or lease is not approved, Purchaser or Dealer may cancel this sale and any downpayment and/or trade-in Purchaser submitted will be returned to Purchaser, provided that any vehicle delivered by the Dealer pursuant to this agreement is returned to the Dealer in the same condition as delivered to Purchaser, normal wear and tear excepted, within twenty-four hours of written or oral notice to Purchaser of the credit denial.

11. **Security Agreement** - Purchaser hereby grants Dealer, its successors and assigns, a security interest in the motor vehicle, equipment and accessories to be purchased pursuant to this agreement and such security interest shall remain in effect until all sums due hereunder have been paid in full.

12. **Resale** - Purchaser represents, warrants and affirms to Dealer that Purchaser is not purchasing the vehicle for resale or export within the period beginning on the date the vehicle title is issued to Purchaser and ending on the date six (6) months thereafter. Purchaser confirms that Dealer is relying on this representation and agrees that Dealer would not sell Purchaser the vehicle without this representation from Purchaser. If Dealer is required, by the vehicle manufacturer, to forfeit or repay any manufacturer incentives, allowance and/or special pricing or if Dealer suffers any other loss or harm resulting from Purchaser's breach of this provision, Purchaser agrees to indemnify and hold Dealer harmless from any cost, loss or harm suffered by Dealer resulting from Purchaser's breach of this provision.

13. **Attorney's Fees** - In the event any party to this invoice shall commence a proceeding against another to enforce the terms hereof, or to declare rights hereunder, as the result of a breach of any provision of this invoice, the prevailing party in any such proceeding shall be entitled to recover from the losing party its costs of suit, including reasonable attorney's fees, as may be fixed by the decision-maker.

14. **Estimates** - Any amount marked as an "estimate" on this agreement is based on the best information available to the Dealer and is subject to

3. **Default - New & Used Vehicle** - In the event of default, which includes, but is not limited to (1) Purchaser's check is returned without payment; (2) promissory note not timely paid; (3) trade-in vehicle not delivered to dealer; (4) trade-in title not delivered unencumbered; (5) failure to cooperate and sign documents; and/or (6) failure or refusal of Purchaser to accept delivery of the motor vehicle ordered hereunder, Dealer shall be entitled, at its discretion, to the choice of remedies in this Agreement, which may be used separately or together, including (1) cancel purchase order; (2) repossess vehicle without notice; (3) rescind the sales transaction; (4) seek collection for amounts due; and/or (5) retain as liquidated damages any cash down payment made by Purchaser, and in the event a used motor vehicle has been traded in as a part of the consideration for the motor vehicle ordered hereunder, to sell such used motor vehicle and reimburse himself out of the proceeds of such sale for any actual damages suffered by Dealer as a result of such default. Dealer shall be entitled to recover from Purchaser for an event of default costs for repossession/collection, reasonable interest plus reasonable attorney's fees. Any waiver of all or part of a remedy is not a continuing waiver.

4. **Dealer's Right To Terminate Agreement - New & Used Vehicles** - Dealer may cancel this Agreement if: (1) Purchaser's credit application is not approved by financing source and/or approved on terms acceptable to Dealer; (2) on event of default as defined above; (3) any statement or representation by Purchaser is not accurate or truthful; or (4) Dealer cannot deliver vehicle for any reason set forth in Paragraph 1. Dealer's only obligation or liability shall be as stated in Paragraph 1.

5. **Conditions Beyond Dealer's Control** - Dealer shall not be liable for failure to deliver or delay in delivering the motor vehicle covered by this order where such failure or delay is due, in whole or part, to any cause beyond the control or without the fault or negligence of dealer.

6. **Taxes** - Unless otherwise expressly provided, the Total Purchase Price for the ordered vehicle specified on the reverse side hereof does not include any taxes imposed by any governmental authority with respect to such vehicle prior to or at the time of delivery of such vehicle to the Purchaser, the Purchaser assumes and agrees to pay any and all such taxes, and any and all other taxes except income taxes, imposed on or incidental to the transaction covered by this order, regardless of who may have the primary tax liability.

7. **Documents** - Purchaser agrees to cooperate and execute all documents required by Dealer to complete the sale/lease of a vehicle. Default provisions of paragraph 3 apply for failure. In the event the Buyer's Order must be retyped or changed, Purchaser agrees to execute a new Buyer's Order so long as there is not a material change in the terms agreed upon.

8. **Warranty Limitations** - *DEALER HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, EXCEPT IF DEALER PROVIDES A WRITTEN WARRANTY OR AT TIME OF SALE OR WITHIN 90 DAYS THEREAFTER ENTERS INTO A SERVICE CONTRACT, IN WHICH CASE ANY IMPLIED WARRANTIES SHALL BE LIMITED TO THE DURATION OF SAID WRITTEN WARRANTY OR SERVICE CONTRACT. PURCHASER SHALL NOT BE ENTITLED UNDER ANY CIRCUMSTANCES TO RECOVER FROM DEALER ANY CONSEQUENTIAL DAMAGES, DAMAGES TO PROPERTY, DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFITS OR INCOME OR ANY OTHER INCIDENTAL DAMAGES. THE DEALER NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF SUCH VEHICLE. THIS DISCLAIMER IN NO WAY AFFECTS THE TERMS OF THE MANUFACTURER'S WARRANTY. FOR NEW AND USED VEHICLES TO WHICH ANY MANUFACTURER'S WARRANTY APPLIES, SAID WARRANTIES ARE THE MANUFACTURER'S WARRANTIES ONLY AND NOT THE DEALER'S.*

9. **Cash Transaction** - In the case of a cash transaction, title to the ordered vehicle shall not pass to the Purchaser until the Dealer shall have received, in cash, the full amount of the Unpaid Balance. However, the Dealer may, at its discretion, pass title to the ordered vehicle prior to receipt of the full amount of the Unpaid Balance. The passing of title prior to receipt of the full cash amount of Unpaid Balance shall not relieve Purchaser's obligation to pay, in full, the Unpaid Balance as shown on the reverse side hereof. In the event that the transaction covered by the order is not a cash transaction, Purchaser agrees to execute, before or at the time of delivery of the ordered vehicle, such conditional sales contracts and other instruments as may be required by Dealer.

10. **Financing or Leasing** - If Purchaser is financing this transaction or leasing the vehicle, the transaction is conditioned upon approval of Purchaser's retail installment sale contract or lease by a financial source on terms acceptable to the Dealer. If the retail installment sale contract or lease is not approved, Purchaser or Dealer may cancel this sale and any downpayment and/or trade-in Purchaser submitted will be returned to Purchaser, provided that any vehicle delivered by the Dealer pursuant to this agreement is returned to the Dealer in the same condition as delivered to Purchaser, normal wear and tear excepted, within twenty-four hours of written or oral notice to Purchaser of the credit denial.

11. **Security Agreement** - Purchaser hereby grants Dealer, its successors and assigns, a security interest in the motor vehicle, equipment and accessories to be purchased pursuant to this agreement and such security interest shall remain in effect until all sums due hereunder have been paid in full.

12. **Resale** - Purchaser represents, warrants and affirms to Dealer that Purchaser is not purchasing the vehicle for resale or export within the period beginning on the date the vehicle title is issued to Purchaser and ending on the date six (6) months thereafter. Purchaser confirms that Dealer is relying on this representation and agrees that Dealer would not sell Purchaser the vehicle without this representation from Purchaser. If Dealer is required, by the vehicle manufacturer, to forfeit or repay any manufacturer incentives, allowance and/or special pricing or if Dealer suffers any other loss or harm resulting from Purchaser's breach of this provision, Purchaser agrees to indemnify and hold Dealer harmless from any cost, loss or harm suffered by Dealer resulting from Purchaser's breach of this provision.

13. **Attorney's Fees** - In the event any party to this invoice shall commence a proceeding against another to enforce the terms hereof, or to declare rights hereunder, as the result of a breach of any provision of this invoice, the prevailing party in any such proceeding shall be entitled to recover from the losing party its costs of suit, including reasonable attorney's fees, as may be fixed by the decision-maker.

14. **Estimates** - Any amount marked as an "estimate" on this agreement is based on the best information available to the Dealer and is subject to change when the true amount is determined.

15. **Used Vehicle Disclosure** - CONTRACTUAL DISCLOSURE STATEMENT FOR USED VEHICLE: THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. THE INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE. UNDER VIRGINIA LAW FAILURE TO PROVIDE THIS OR AN "AS IS" SALE DISCLOSURE MAY SUBJECT DEALER TO UP TO $1,000 CIVIL PENALTY, AND MAY ALLOW BUYER TO CANCEL SALE WITHIN 30 DAYS.

| NOTICE |
| --- |
| 16. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER. |

# RETAIL INSTALLMENT SALE CONTRACT — SIMPLE FINANCE CHARGE
## (WITH ARBITRATION PROVISION)

Deal #23075
Stock #UP21940

Dealer Number _____   Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| JEREMIAH W MIMS<br>3952 ST ERICS TURN<br>WICCIAMSBURG, VA 23185<br>CHARLES CITY | N.A. | PRIORITY HONDA HAMPTON<br>4115 W MERCURY BLVD<br>HAMPTON, VA 23666 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2018 | HONDA ODYSSEY | 5FNRL6H77JB051484 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $9829.72 is |
|---|---|---|---|---|
| 3.24 % | $ 3071.49 | $ 29769.87 | $ 32841.36 | $ 42671.08 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 456.13 | Monthly beginning JUNE 15TH, 2018 |
| N.A. | N.A. | N.A. |

Or As Follows:

N.A.

**Late Charge.** If payment is not received in full within __7__ days after it is due, you will pay a late charge of __5__ % of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

## ITEMIZATION OF AMOUNT FINANCED

1  Cash Price (including $ 1468.44 sales tax)  $ 36303.59 (1)
2  Total Downpayment =
   Trade-In  2016  CHEVROLET  COLORADO  2000
   (Year)  (Make)  (Model)

   Gross Trade-In Allowance  $ 56000.00
   Less Pay Off Made By Seller  $ 46170.28
   Equals Net Trade In  $ 9829.72
   + Cash  $ 0.00
   + Other  N.A.  $ 0.00
   (If total downpayment is negative, enter "0" and see 4I below)  $ 9829.72 (2)
3  Unpaid Balance of Cash Price (1 minus 2)  $ 26473.87 (3)
4  Other Charges including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):
   A Cost of Optional Credit Insurance
     Paid to Insurance Company or Companies.
     Life  N.A.  $N.A.
     Disability  N.A.  $N.A.  $  N.A.
   B Vendor's Single Interest Insurance  $  N.A.

---

Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is authorized to sell such insurance in Virginia. Your choice will not effect our decision to extend credit or the terms of this contract. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest insurance is required is checked below.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

**Optional Credit Insurance**
☐ Credit Life:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability: ☐ Buyer  ☐ Co-Buyer  ☐ Both
Premium:
  Credit Life $ N.A.
  Credit Disability $ N.A.
Insurance Company Name
  N.A.
Home Office Address
  N.A.

Credit life insurance and credit disability insurance are not required to obtain credit (see back). You have the right to use alternate coverage or buy such insurance elsewhere. Your choice of insurer will not effect our decision to extend credit or the terms of this contract. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit Disability Insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**
☐  N.A.  N.A.
  Type of Insurance  Term
Premium $ N.A.
Insurance Company Name
  N.A.
Home Office Address
  N.A.

☐ agricultural

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 9829.72 is |
|---|---|---|---|---|
| 3.24 % | $ 3071.49 | $ 29769.87 | $ 32841.36 | $ 42671.08 |

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 456.13 | Monthly beginning JUNE 15TH, 2018 |
| N.A. | N.A. | N.A. |

Or As Follows:

N.A.

**Late Charge.** If payment is not received in full within ___7___ days after it is due, you will pay a late charge of ___5___ % of the part of the payment that is late.
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED

1 Cash Price (Including $ 1468.44 sales tax) .................. $ 36303.59 (1)
2 Total Downpayment = 2000
  Trade-In 2016 CHEVROLET COLORADO
    (Year)     (Make)          (Model)
    Gross Trade-In Allowance ............................ $ 56000.00
    Less Pay Off Made By Seller ......................... $ 46170.28
    Equals Net Trade In ................................. $ 9829.72
    + Cash ............................................. $ 0.00
    + Other N.A. ....................................... $ 0.00
    (If total downpayment is negative, enter "0" and see 4I below) .. $ 9829.72 (2)
3 Unpaid Balance of Cash Price (1 minus 2) .................. $ 26473.87 (3)
4 Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts):
  A Cost of Optional Credit Insurance
    Paid to Insurance Company or Companies.
    Life N.A.                 $ N.A.
    Disability N.A.           $ N.A.     $ N.A.
  B Vendor's Single Interest Insurance
    Paid to Insurance Company(ies) ...................... $ N.A.
  C Other Optional Insurance Paid to Insurance Company or Companies $ N.A.
  D Optional Gap Contract ............................... $ N.A.
  E Official Fees Paid to Government Agencies
    1) to N.A.          for N.A.        $ N.A.
    2) to N.A.          for N.A.        $ N.A.
    3) to N.A.          for N.A.        $ N.A.
  F Government Taxes Not Included in Cash Price ........... $ 75.00
  G Government License and/or Registration Fees
    LICENSE/REGISTRATION .............................. $ 2.00
  H Government Certificate of Title Fees ................. $ 10.00
  I Other Charges (Seller must identify who is paid and describe purpose.)
    1) to N.A.          for Prior Credit or Lease Balance  $ N.A.
    2) to N.A.          for N.A.        $ N.A.
    3) to N.A.          for N.A.        $ N.A.
    4) to N.A.          for N.A.        $ N.A.

---

Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is authorized to sell such insurance in Virginia. Your choice will not affect our decision to extend credit or the terms of this contract. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest insurance is required is checked below.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**
**Optional Credit Insurance**
☐ Credit Life : ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability : ☐ Buyer ☐ Co-Buyer ☐ Both
Premium:
  Credit Life $ N.A.
  Credit Disability $ N.A.
Insurance Company Name
N.A.
Home Office Address
N.A.

Credit life insurance and credit disability insurance are not required to obtain credit (see back). You have the right to use alternate coverage or buy such insurance elsewhere. Your choice of insurer will not affect our decision to extend credit or the terms of this contract. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. This insurance may not pay all you owe on this contract if you make late payments. Credit Disability Insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Optional Insurance**
☐ N.A.                              N.A.
  Type of Insurance                 Term
Premium $ N.A.
Insurance Company Name
N.A.
Home Office Address
N.A.

☐ N.A.                              N.A.
  Type of Insurance                 Term
Premium $ N.A.
Insurance Company Name
N.A.
Home Office Address
N.A.

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost. Your choice of insurer will not affect our decision to extend credit or the terms of this contract.
**I want the insurance checked above.**

X N.A.                              N.A.
Buyer Signature                     Date
X                                   N.A.
Co-Buyer Signature                  Date
THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY

| | | | |
|---|---|---|---|
| | Paid to Insurance Company(ies) | $ | N.A. |
| C | Other Optional Insurance Paid to Insurance Company or Companies | $ | N.A. |
| D | Optional Gap Contract | $ | N.A. |
| E | Official Fees Paid to Government Agencies | $ | N.A. |
| | 1) to N.A.          for N.A. | $ | N.A. |
| | 2) to N.A.          for N.A. | $ | N.A. |
| | 3) to N.A.          for N.A. | $ | N.A. |
| F | Government Taxes Not Included in Cash Price | $ | 75.00 |
| G | Government License and/or Registration Fees | | |
| | LICENSE/REGISTRATION | $ | 2.00 |
| H | Government Certificate of Title Fees | $ | 10.00 |
| I | Other Charges (Seller must identify who is paid and describe purpose). | | |
| | 1) to N.A.          for Prior Credit or Lease Balance | $ | N.A. |
| | 2) to N.A.          for N.A. | $ | N.A. |
| | 3) to N.A.          for N.A. | $ | N.A. |
| | 4) to N.A.          for N.A. | $ | N.A. |
| | 5) to PRIORITY HONDA   for Online Filing Fee | $ | 10.00 |
| | 6) to PRIORITY HONDA   for Processing Fee | $ | 699.00 |
| | 7) to N.A.          for N.A. | $ | N.A. |
| | 8) to N.A.          for N.A. | $ | N.A. |
| | 9) to N.A.          for N.A. | $ | N.A. |
| | 10) to AUL          for SERVICE CONTRACT | $ | 2500.00 |
| | Total Other Charges and Amounts Paid to Others on Your Behalf | $ | 3296.00  (4) |
| 5 | Amount Financed (3 + 4) | $ | 29769.87  (5) |

**OPTION:** ☐ You pay no finance charge if the Amount Financed, Item 5, is paid in full on or before _N.A._ , Year _N.A._ . SELLER'S INITIALS _N.A._

---

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI Insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI Insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI Insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ _N.A._ and is also shown in item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract. See back of this contract for more information.

---

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term _N.A._ Mos. _N.A._ _____ Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X _N.A._

---

### NO COOLING OFF PERIOD

**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

---

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract, along with all other documents signed by you in connection with the purchase of the vehicle, comprise the entire agreement between you and us affecting this purchase. No oral agreements or understandings are binding. Upon assignment of this contract: (i) only this contract and addenda to this contract comprise the entire agreement between you and the assignee relating to this contract; (ii) any change to this contract must be in writing and the assignee must sign it; and (iii) no oral changes are binding. Buyer Signs X _____  Co-Buyer Signs X _N.A._

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

**See back for other important agreements.**

## NO LIABILITY INSURANCE INCLUDED

**NOTICE TO RETAIL BUYER:** Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign.

---

Right column:

☐ _N.A._
Type of Insurance          Term

Premium $ _N.A._
Insurance Company Name _____
_N.A._
Home Office Address _____

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost. Your choice of insurer will not affect our decision to extend credit or the terms of this contract.

I want the insurance checked above.

X _N.A._
Buyer Signature          _N.A._ Date

X
Co-Buyer Signature          Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE.**

**Returned Payment Charge:** If any check you give us is dishonored or electronic payment you make is returned unpaid, we may, at our option, charge you $ _.50_

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _____
Co-Buyer Signs X _____

| | | | |
|---|---|---|---|
| 6) to PRIORITY HONDA | for Processing Fee | $ | 699.00 |
| 7) to N.A. | for N.A. | $ | N.A. |
| 8) to N.A. | for N.A. | $ | N.A. |
| 9) to N.A. | for N.A. | $ | N.A. |
| 10) to AUL | for SERVICE CONTRACT | $ | 2500.00 |

Total Other Charges and Amounts Paid to Others on Your Behalf     $ 3296.00 (4)

5 Amount Financed (3 + 4)     $ 29769.87 (5)

**DAMAGE.**

**Returned Payment Charge:** If any check you give us is dishonored or electronic payment you make is returned unpaid, we may, at our option, charge you $ .50

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _____

Co-Buyer Signs X _____

**OPTION:** ☐ You pay no finance charge if the Amount Financed, Item 5, is paid in full on or before

N.A. , Year N.A. . SELLER'S INITIALS N.A.

---

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ N.A. and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract. See back of this contract for more information.

---

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N.A.     Mos.     N.A.     Name of Gap Contract

I want to buy a gap contract. _____

Buyer Signs X N.A.

---

## NO COOLING OFF PERIOD

**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

---

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract, along with all other documents signed by you in connection with the purchase of the vehicle, comprise the entire agreement between you and us affecting this purchase. No oral agreements or understandings are binding. Upon assignment of this contract: (i) only this contract and addendum to this contract comprise the entire agreement between you and the assignee relating to this contract; (ii) any change to this contract must be in writing and the assignee must sign it; and (iii) no oral changes are binding.     Buyer Signs X _____     Co-Buyer Signs X N.A.

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

See back for other important agreements.

## NO LIABILITY INSURANCE INCLUDED

**NOTICE TO RETAIL BUYER:** Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration provision on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _____ Date 05/01/18 Co-Buyer Signs X N.A. Date N.A.

**Co-Buyers and Other Owners** — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs X _____ N.A. Address _____

Seller signs PRIORITY HONDA HAMPTON 05/01/18 By _____ Title GSM

---

Seller assigns its interest in this contract to Chartway Federal Credit Union (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse PRIORITY HONDA HAMPTON     ☑ Assigned without recourse     ☐ Assigned with limited recourse

| Seller | | By | | Title | COM |
|---|---|---|---|---|---|

**LAW** FORM NO. 553-VA-ARB (REV. 7/14) U.S. PATENT NO. D454,737
©2014 The Reynolds and Reynolds Company TO ORDER www.reyrey.com 1-800-344-0996, fax 1-800-531-9860
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

**FILE COPY**

# OTHER IMPORTANT AGREEMENTS

## 1. FINANCE CHARGE AND PAYMENTS

**a. How we will figure the Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**e. Your right to refinance a balloon payment.** A balloon payment is any payment other than a down payment that is more than 10% greater than the regular or recurring installment payments. If you use the vehicle primarily for consumer purposes, you have the right to refinance a balloon payment over an extended period with additional payments. The additional periodic payments will not be more than 10% greater than the regularly scheduled installment payments.

## 2. YOUR OTHER PROMISES TO US

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance you must have on the vehicle.**

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
- You pay any payment (plus any late charges) more than 10 days late or not at all;
- You give us false, incomplete, or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. You will also pay any collection costs we incur as the law allows.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle. We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g. What we may do about optional insurance, maintenance, service or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 4. WARRANTIES SELLER DISCLAIMS

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose. Any implied warranties arising from a written warranty or service contract are limited to the duration of such written warranty or service contract.**

This provision does not affect any warranties covering the

option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**e. Your right to refinance a balloon payment.** A balloon payment is any payment other than a down payment that is more than 10% greater than the regular or recurring installment payments. If you use the vehicle primarily for consumer purposes, you have the right to refinance a balloon payment over an extended period with additional payments. The additional periodic payments will not be more than 10% greater than the regularly scheduled installment payments.

## 2. YOUR OTHER PROMISES TO US

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle. We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g. What we may do about optional insurance, maintenance, service or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 4. WARRANTIES SELLER DISCLAIMS

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose. Any implied warranties arising from a written warranty or service contract are limited to the duration of such written warranty or service contract.

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

## 5. Used Car Buyers Guide.

The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**Spanish Translation: Guía para compradores de vehículos usados.** La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

## 6. VSI AND OPTIONAL INSURANCE

Choice of Insurer. If vendor's single interest insurance is required (as indicated on the front), or if you desire optional insurance, such as credit life insurance or credit disability insurance, you have the right to use alternative coverage or to buy insurance elsewhere from the agent or insurer of your choice. You may also buy required physical damage

You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, mainte-nance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late pay-ment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

vehicle that the vehicle manufacturer may provide.

5. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
Spanish Translation: **Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

6. **VSI AND OPTIONAL INSURANCE**
Choice of Insurer. If vendor's single interest insurance is required (as indicated on the front), or if you desire optional insurance, such as credit life insurance or credit disability insurance, you have the right to use alternative coverage or to buy insurance elsewhere from the agent or insurer of your choice. You may also buy required physical damage insurance from the agent or insurer of your choice. Your choice of agent or insurer will not affect our decision to extend credit or your credit terms.

7. **SERVICING AND COLLECTION CONTACTS**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

8. **APPLICABLE LAW**
Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

---

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**
1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website. Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other

other contract charges, you agree that we may subtract the refund from what you owe.

insurance from the agent or insurer of your choice. Your choice of agent or insurer will not affect our decision to extend credit or your credit terms.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
    **a.** You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

**7. SERVICING AND COLLECTION CONTACTS**
You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**8. APPLICABLE LAW**
Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**
1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

Form No. 553-VA-ARB Rev. 7/14



**HAMPTON**
4115 W. Mercury Blvd.
Hampton, VA 23666
757-838-1252

May 23, 2018

<u>**VIA ELECTRONIC MAIL AND FIRST-CLASS MAIL**</u>

Mr. Jeremiah Mims
3952 ST Erics Turn
Williamsburg, Virginia 23185

Re:     Rescission of Purchase

Dear Mr. Mims:

This letter is to inform you that Priority Honda is rescinding the Buyer's Order and Retail Installment Sales Contract you signed on May 1, 2018 for the purchase of a used 2018 Honda Odyssey (VIN 5FNRL6H77JB051484) because the Buyer's Order contains a mutual mistake of fact regarding the trade allowance value of your 2016 Chevrolet Colorado (VIN 1GCGTCE36G12304).

The Buyer's Order and Retail Installment Sales Contract mistakenly identified the trade allowance value of your trade in vehicle as $56,000, even though you and Priority Honda agreed to the trade allowance value of $28,000 as documented by the Guarantee of Title and Worksheet you signed at the time of sale.

Please contact Matt Davis at Priority Honda and make arrangements to either sign corrected documents identifying the trade allowance value of the 2016 Chevrolet Colorado at $28,000, or to pick up your trade-in vehicle and return the 2018 Honda Odyssey. If you fail to do so, Priority Honda will be forced to pursue its legal and equitable remedies.

Very truly yours,

Matthew Davis
General Manager



**4115 West Mercury Blvd.**
**Hampton, Virginia 23666**

Return Service Requested



02 1P        $ 000.50⁰
0000024554   MAY 23  2018
MAILED FROM ZIP CODE 23666

MR. JEREMIAH MIMS
3952 ST ERICS TURN
WILLIAMSBURG, VA 23185



**HAMPTON**
4115 W. Mercury Blvd
Hampton, VA 23666
757-838-1252

June 12, 2018

**VIA ELECTRONIC MAIL AND FIRST-CLASS MAIL**

Mr. Jeremiah Mims
3952 ST Erics Turn
Williamsburg, Virginia 23185

Re:     Rescission of Purchase

Dear Mr. Mims:

This is the second letter we have sent to you notifying you that Priority Honda has rescinded the Buyer's Order and Retail Installment Sales Contract you signed on May 1, 2018 for the purchase of a used 2018 Honda Odyssey (VIN 5FNRL6H77JB051484) because the Buyer's Order contains a mutual mistake of fact regarding the trade allowance value of your 2016 Chevrolet Colorado (VIN 1GCGTCE36G12304).   The Buyer's Order and Retail Installment Sales Contract mistakenly identified the trade allowance value of your trade in vehicle as $56,000, even though you and Priority Honda agreed to the trade allowance value of $28,000 as documented by the Guarantee of Title and Worksheet you signed at the time of sale.

You have refused to cooperate with Priority Honda to make arrangements to either sign corrected documents identifying the trade allowance value of the 2016 Chevrolet Colorado at $28,000, or to pick up your trade-in vehicle and return the 2018 Honda Odyssey.  Instead, you have sent a cashier's check in the amount of $460 as your first payment on the 2018 Honda Odyssey.  You are hereby on notice that Priority Honda will not accept or cash this payment. Priority Honda will not register or title the 2018 Honda Odyssey.  Moreover, you are on notice that Priority Honda has not processed the payoff on your 2016 Chevrolet Colorado trade-in vehicle and as such you remain responsible and obligated to make the monthly payments owed on that vehicle.  We will move forward to invoke mediation and arbitration through the Better Business Bureau as set forth in the Buyer's Order.

Very truly yours,

Matthew Davis



4115 West Mercury Blvd.
Hampton, Virginia 23666

Return Service Requested



Mr. Jeremiah Mims
3952 ST. Eries Turn
Williamsburg, VA 23185

UPS Worldwide Express®
UPS 2nd Day Air®

Insert shipping documents under window from the top.

Print Label

UNITED PARCEL SERVICE

0101951033  4/14  PAC  United Parcel Service

MATT DAVIS
7578381252
PRIORITY HONDA HAMPTON
4115 W MERCURY BLVD
HAMPTON  VA 23666

1 LBS                    1 OF 1

SHIP TO:
MR. JERMIAH MIMS

MR. JERMIAH MIMS
3952 ST. ERIES TURN
WILLIAMSBURG  VA 23185

VA 236 9-03

UPS NEXT DAY AIR                    1
TRACKING #: 1Z 87E 39R A2 9420 2164

BILLING: P/P
ADULT SIGNATURE REQUIRED-MIN 21

XOL 18.03.09     NV45 99.0A 04/2018                    TM

Page 1 of 1

UPS® (1-800-742-5877)
ff location near you.

lopes may only contain
lectronic media, and must
ntaining items other than
be billed by weight.

or documents of no commercial
edia as documents. Visit
phit is classified as a document.

nvelope must weigh 8 oz. or less.
x. will be billed by weight.

for shipments of electronic media
Nolio items. Do not send cash

ments printed from a laser

he rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or
ts for fixed (the "GMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

Print Label



# CHARAPP & WEISS, LLP

ATTORNEYS AT LAW
8180 GREENSBORO DRIVE
SUITE 1000
McLEAN, VIRGINIA 22102

TELEPHONE (703) 564-0220
FACSIMILE (703) 564-0221
WWW.CWATTORNEYS.COM

June 20, 2018

## *VIA ELECTRONIC MAIL AND REGULAR MAIL*

Ms. Valerie Butts
Director of Dispute Resolution
Better Business Bureau
586 Virginian Drive
Norfolk, Virginia 23505
vbutts@hamptonroadsbbb.org

Re:   **Mandatory Mediation Before BBB Arbitration Priority Honda Hampton  v.
Mr. Mims**

Dear Ms. Butts:

This letter is to request that the Better Business Bureau appoint a mediator pursuant to a
Buyer's Order that mandates if there is a dispute the parties agree to mandatory mediation before
the Better Business Bureau prior to mandatory and binding arbitration before the Better Business
Bureau as the sole means of resolving disputes.  The mediation is to occur in or about the
Norfolk office.

Attached is the fully endorsed Buyer's Order and several documents signed by the
customer.  The dispute relates to a mutual mistake issue that the trade in was agreed to be
$28,000 on all documents and then by some error is listed on the Buyer's as $56,000 by doubling
the trade in agreed value.

We request mediation as soon as possible since the transaction remains in limbo.

Very truly yours,

Brad D. Weiss

Enclosures
cc: Mr. Mims. (Via e-mail and regular mail)

**PRIORITY Honda**
HAMPTON

4115 W. Mercury Blvd.
Hampton, VA 23666
www.priorityauto.com
(757) 838-1252

Deal # : 23075
Customer # : 89742
STOCK NO.
UP21940

DATE OF SALE  05/01/2018

| PURCHASER'S NAME | JEREMIAH W MIMS | HOME ADDRESS | 3982 ST ERICS TURN |
|---|---|---|---|
| CO-PURCHASER'S NAME | | CITY, STATE, ZIP | WILLIAMSBURG  VA   23185 |
| | | COUNTY · CHARLES CITY | |

PLEASE ENTER MY ORDER FOR THE FOLLOWING:

☐ NEW   ☒ USED   ☐ DEMO

HOME PHONE

BUS. PHONE  757/856-2056

| YEAR | MAKE | MODEL | TYPE/DOORS | COLOR |
|---|---|---|---|---|
| 2016 | HONDA | ODYSSEY | | GY |

| MILEAGE | IN SERVICE DATE |
|---|---|
| 3781 | 5 F N R L 6 H 7 7 J B 0 5 1 4 8 4 |

| | |
|---|---|
| PRICE  INCLUDING FREIGHT, HANDLING & DELIVERY | 34685.15 |
| IF THIS BUYERS ORDER IS FOR A NEW VEHICLE WITH MORE THAN 750 MILES PLEASE READ THIS NOTICE: | 150.00 |
| | N/A |
| Notice: This new motor vehicle has accumulated mileage in excess of 750 miles as the result of use as a demonstrator and/or as the result of delivery to a prior prospective purchaser who never took title to it and who returned it. | |
| TOTAL PURCHASE PRICE | 34835.15 |
| PROCESSING FEE FOR CONSUMER SERVICES | 699.00 |
| TITLE TAX | 1468.44 |
| DEALER'S BUSINESS LICENSE TAX | N/A |
| PURCHASER'S ONLINE SYSTEMS FILING FEE | 10.00 |
| LICENSE FEE | 2.00 | TITLE FEE | 10.00 | | 12.00 |
| TOTAL DELIVERED PRICE | 37024.59 |
| PAYMENT: ☐ CASH ☐ PC ☐ CC ☐ OTHER | N/A |
| ALLOWANCE FOR USED CAR TRADE-IN AS APPRAISED | 56000.00 |
| LESS BALANCE OWING TO ► | USAA | APPROXIMATELY | 46170.28 |
| | EQUITY ON TRADE-IN | 9829.72 |
| | ADDITIONAL DOWN PAYMENT ON DELIVERY | N/A |
| DATE | SIGNATURE | | |

| DESCRIPTION OF TRADE-IN | TOTAL DOWN PAYMENT (1+2+3+4) | 9829.72 |
|---|---|---|
| YEAR 2016 | MAKE | MODEL | TYPE/DOORS | EXTENDED SERVICE CONTRACT | 2500.00 | |
| CHEVROLET | COLORADO | BLACK | PU | | |
| | INCLUDING | |
| | TAX OF  76.00 | 2575.00 |
| SALESPERSON  NICK NICHOLS | BALANCE DUE ON DELIVERY | 29768.87 |

## NO LIABILITY INSURANCE INCLUDED UNLESS SPECIFICALLY INCLUDED

| | Mediation Organization Name, Address and Telephone | |
|---|---|---|
| | Better Business Bureau | |
| | 586 Virginia Drive | |
| | Norfolk, VA 23505 | |
| | BBB # 757-531-1300 | |
| | A CUSTOMER ASSISTANCE PROGRAM OF THE BETTER BUSINESS BUREAU | |

Approved _____

This Order is not valid unless signed and accepted by the Dealer or his authorized representative.

05/01/2018

Signed _____

# ADDITIONAL CONDITIONS OF SALE

It is further understood and agreed that the order on the reverse side hereof is subject to the following terms and conditions:

1. New Vehicle Sales - If the manufacturer/distributor changes the suggested retail price of equipment or ordered vehicle, Dealer may change the price accordingly. If price is increased by Dealer, Purchaser may, if dissatisfied therewith, cancel this order in which event if a used motor vehicle has been traded in as part of the consideration for such new motor vehicle, such used motor vehicle shall be returned to Purchaser upon payment of a reasonable charge for storage, repairs and reconditioning (if any) or, if such used motor vehicle has been previously sold by Dealer, the amount received therefor, less a selling commission of 15% and any expense incurred in storing, insuring, conditioning or advertising said used motor vehicle for sale, shall be returned to Purchaser. If the manufacturer/distributor substantially modifies the ordered vehicle design/equipment or does not manufacture or distribute an ordered vehicle, this agreement is voidable by either party upon ten (10) days written notice. Dealer shall only be obligated to return deposit without interest, trade-in vehicle or the cash price of the trade-in vehicle as set forth above at Dealer's discretion.

2. Trade-In Vehicles - If the used motor vehicle which has been traded in as part of the consideration for the motor vehicle ordered hereunder is not to be delivered to Dealer until delivery of such motor vehicle, the used motor vehicle may be reappraised at that time by Dealer and such reappraised value shall determine the allowance made for such used motor vehicle. Trade-in vehicle shall be delivered in same condition as appraised with same equipment. Purchaser guarantees to deliver title free and clear of liens or encumbrances within five (5) days of signing this agreement. If pay-off on Purchaser's trade-in is more than estimated herein, Purchaser shall immediately pay said difference and, if lower, Dealer will return said amount. If a trade-in, title or equipment is not delivered as agreed, Dealer may cancel this purchase order and upon demand receive from Purchaser payment of a pay-off on trade-in and/or seek remedies as set forth in Paragraph 3 herein. At Dealer's discretion. Purchaser assumes risk of loss to trade-in vehicle until title reassigned.

3. Default - New & Used Vehicle - In the event of default, which includes, but is not limited to (1) Purchaser's check is returned without payment; (2) promissory note not timely paid; (3) trade-in vehicle not delivered to dealer; (4) trade-in title not delivered unencumbered; (5) failure to cooperate and sign documents; and/or (6) failure or refusal of Purchaser to accept delivery of the motor vehicle ordered hereunder, Dealer shall be entitled, at its discretion, to the choice of remedies in this Agreement, which may be used separately or together, including (1) cancel purchase order; (2) repossess vehicle without notice; (3) rescind the sales transaction; (4) seek collection for amounts due; and/or (5) retain as liquidated damages any cash down payment made by Purchaser; and in the event a used motor vehicle has been traded in as a part of the consideration for the motor vehicle ordered hereunder, to sell such used motor vehicle and reimburse himself out of the proceeds of such sale for any actual damages suffered by Dealer as a result of such default. Dealer shall be entitled to recover from Purchaser for an event of default costs for repossession/collection, reasonable interest plus reasonable attorney's fees. Any waiver of all or part of a remedy is not a continuing waiver.

4. Dealer's Right To Terminate Agreement - New & Used Vehicles - Dealer may cancel this Agreement if: (1) Purchaser's credit application is not approved by financing source and/or approved on terms acceptable to Dealer; (2) an event of default as defined above; (3) any statement or representation by Purchaser is not accurate or truthful; or (4) Dealer cannot deliver vehicle for any reason set forth in Paragraph 1. Dealer's only obligation or liability shall be as stated in Paragraph 1.

5. Conditions Beyond Dealer's Control - Dealer shall not be liable for failure to deliver or delay in delivering the motor vehicle covered by this order where such failure or delay is due, in whole or part, to any cause beyond the control or without the fault or negligence of dealer.

6. Taxes - Unless otherwise expressly provided, the Total Purchase Price for the ordered vehicle specified on the reverse side hereof does not include any taxes imposed by any governmental authority with respect to such vehicle prior to or at the time of delivery of such vehicle to the Purchaser, the Purchaser assumes and agrees to pay any and all such taxes, and any and all other taxes except income taxes, imposed on or incidental to the transaction covered by this order, regardless of who may have the primary tax liability.

7. Documents - Purchaser agrees to cooperate and execute all documents required by Dealer to complete the sale/lease of a vehicle. Default provisions of paragraph 3 apply for failure. In the event the Buyer's Order must be retyped or changed, Purchaser agrees to execute a new Buyer's Order so long as there is not a material change in the terms agreed upon.

8. Warranty Limitations - *DEALER HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, EXCEPT IF DEALER PROVIDES A WRITTEN WARRANTY OR AT TIME OF SALE OR WITHIN 90 DAYS THEREAFTER ENTERS INTO A SERVICE CONTRACT, IN WHICH CASE ANY IMPLIED WARRANTIES SHALL BE LIMITED TO THE DURATION OF SAID WRITTEN WARRANTY OR SERVICE CONTRACT. PURCHASER SHALL NOT BE ENTITLED UNDER ANY CIRCUMSTANCES TO RECOVER FROM DEALER ANY CONSEQUENTIAL DAMAGES, DAMAGES TO PROPERTY, DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFITS OR INCOME OR ANY OTHER INCIDENTAL DAMAGES.* THE DEALER NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF SUCH VEHICLE. THIS DISCLAIMER IN NO WAY AFFECTS THE TERMS OF THE MANUFACTURER'S WARRANTY. FOR NEW AND USED VEHICLES TO WHICH ANY MANUFACTURER'S WARRANTY APPLIES, SAID WARRANTIES ARE THE MANUFACTURER'S WARRANTIES ONLY AND NOT THE DEALER'S.

9. Cash Transaction - In the case of a cash transaction, title to the ordered vehicle shall not pass to the Purchaser until the Dealer shall have received, in cash, the full amount of the Unpaid Balance. However, the Dealer may, at its discretion, pass title to the ordered vehicle prior to receipt of the full amount of the Unpaid Balance. The passing of title prior to receipt of the full cash amount of Unpaid Balance shall not relieve Purchaser's obligation to pay, in full, the Unpaid Balance as shown on the reverse side hereof. In the event that the transaction covered by the order is not a cash transaction, Purchaser agrees to execute, before or at the time of delivery of the ordered vehicle, such conditional sales contracts and other instruments as may be required by Dealer.

10. Financing or Leasing - If Purchaser is financing this transaction or leasing the vehicle, the transaction is conditioned upon approval of Purchaser's retail installment sale contract or lease by a financial source on terms acceptable to the Dealer. If the retail installment sale contract or lease is not approved, Purchaser or Dealer may cancel this sale and any downpayment and/or trade-in Purchaser submitted will be returned to Purchaser, provided that any vehicle delivered by the Dealer pursuant to this agreement is returned to the Dealer in the same condition as delivered to Purchaser, normal wear and tear excepted, within twenty-four hours of written or oral notice to Purchaser of the credit denial.

11. Security Agreement - Purchaser hereby grants Dealer, its successors and assigns, a security interest in the motor vehicle, equipment and accessories to be purchased pursuant to this agreement and such security interest shall remain in effect until all sums due hereunder have been paid in full.

12. Resale - Purchaser represents, warrants and affirms to Dealer that Purchaser is not purchasing the vehicle for resale or export within the period beginning on the date the vehicle title is issued to Purchaser and ending on the date six (6) months thereafter. Purchaser confirms that Dealer is relying on this representation and agrees that Dealer would not sell Purchaser the vehicle without this representation from Purchaser. If Dealer is required, by the vehicle manufacturer, to forfeit or repay any manufacturer incentives, allowance and/or special pricing or if Dealer suffers any other loss or harm resulting from Purchaser's breach of this provision, Purchaser agrees to indemnify and hold Dealer harmless from any cost, loss or harm suffered by Dealer resulting from Purchaser's breach of this provision.

13. Attorney's Fees - In the event any party to this invoice shall commence a proceeding against another to enforce the terms hereof, or to declare rights hereunder, as the result of a breach of any provision of this invoice, the prevailing party in any such proceeding shall be entitled to recover from the losing party its costs of suit, including reasonable attorney's fees, as may be fixed by the decision-maker.

14. Estimates - Any amount marked as an "estimate" on this agreement is based on the best information available to the Dealer and is subject to change when the true amount is determined.

15. Used Vehicle Disclosure - CONTRACTUAL DISCLOSURE STATEMENT FOR USED VEHICLE: THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. THE INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE. UNDER VIRGINIA LAW FAILURE TO PROVIDE THIS OR AN "AS IS" SALE DISCLOSURE MAY SUBJECT DEALER TO UP TO $1,000 CIVIL PENALTY, AND MAY ALLOW BUYER TO CANCEL SALE WITHIN 30 DAYS.

**NOTICE**

16. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

Worksheet

Page 1 of 1

PRIORITY

Priority Acura
757-523-1700
757-424-5055 (fax)
1-800-235-3603
1701 South Military Highway
Chesapeake, VA 23320

Priority Chevrolet
757-424-1811
757-424-2445 (fax)
1-800-235-6130
1495 South Military Highway
Chesapeake, VA 23320

Priority Toyota
757-366-3000
757-366-5077 (fax)
1-800-236-8562
1800 Greenbrier Parkway
Chesapeake, VA 23320.

Priority Toyota Richmond
804-526-2517
804-526-5095 (fax)
1-800-743-0909
610 Boulevard
Colonial Heights, VA 23834

Priority Hyundai
757-877-8995
757-877-0504 (fax)
1-800-413-7803
12872 Jefferson Avenue
Newport News, VA 23608

## GUARANTEE OF TITLE

I or We _____ **Jeremiah Mims** _____, the undersigned, hereby

warrant and guarantee a title to the following described vehicle:

Year: **2016**   Make: **Chevrolet**   Model: **Colorado**

with Vehicle Identification Number: _____ **1GCGTCE36G1230429** _____, to be furnished

to Priority, free and clear of all encumbrances within ten (10) days of the dated hereof and in

consideration of a trade allowance of $: *28,000.00*

It is further agreed as follows:

If said title is not furnished, I or we do hereby agree to pay Priority the amount of

$ *28,000   00*   in cash. The undersigned, for value received, hereby further agrees that

upon a non-performance of any liabilities of the above mentioned or upon failure of the

undersigned forthwith, with or without notice, to furnish additional securities satisfactory to the

holder, in case of a decline or aforesaid, then in any such case the amount of $ _____

becomes due and payable and the maker(s) and endorser(s) of this instrument hereby waive

protest and the benefit of any exemption under the Homestead of Bankrupt laws as to this debt,

and agree to all expenses incurred in collecting same, including ten percent (10%) attorney's

fees in case the above stated amount is not paid when due and on demand.

Signature _____   Date   **05/01/2018**

Signature _____   Date   _____

worksheet



# PRIORITY

Date: **05/01/2018  2:48:24 PM**
Salesperson: **Nick Nichols The Internet Team**
Manager: **Terry Whitehurst**

## FOR INTERNAL USE ONLY

**CUSTOMER**     Jeremiah Mims                          Home Phone:
Address :        3952 ST ERICS TURN ·
                 WILLIAMSBURG, VA  23185                Work Phone:
                 CHARLES CITY CO
E-Mail :                                                Cell Phone:

**VEHICLE**
Stock #: UP21940      New / Used :     VIN: 5FNRL8H77JB051484      Mileage: 3717
Vehicle: 2018 Honda Odyssey            Color: Modern Steel Me
Type: EX-L Passenger

**TRADE IN**
Payoff: $.00          1GCGTCE38G1230429          30,723
                      VIN:                       Mileage:
Vehicle: 0     2016 Chevrolet Colorado           Black [Black]
Type:          LT 4x4 Crew Cab 5 ft. box 128.3 in. WB     Color:

| | |
|---|---:|
| Selling Price | 37,995.00 |
| Discount | 3,995.00 |
| Adjusted Price | 34,000.00 |
| Total Purchase | 34,000.00 |
| Trade Allowance | 28,000.00 |
| Trade Difference | 6,000.00 |
| Certified Prep Fee | 685.15 |
| Processing Fee | 699.00 |
| Tax | 1,539.21 |
| Non Tax Fees | 22.00 |
| Trade Payoff | |
| Cash Deposit | |
| Balance | 8,945.36 |

**Diana Torres**

| | |
|---|---|
| **From:** | Diana Torres |
| **Sent:** | Wednesday, June 20, 2018 10:40 AM |
| **To:** | 'vbutts@hamptonroadsbbb.org' |
| **Cc:** | ~~▓▓▓▓▓▓~~; Brad Weiss |
| **Subject:** | Mandatory Mediation Before BBB Arbitration Priority Honda Hampton v. Mr. Mims |
| **Attachments:** | 2018.06.20 Ltr to BBB.pdf |

Ms. Butts and Mr. Mims,

Attached please find correspondence from Mr. Weiss within the above-referenced matter. A copy of the same will also follow by regular mail.

Very truly yours,

Diana Torres
Legal Assistant
*CHARAPP & WEISS, LLP*
8180 Greensboro Drive
Suite 1000
McLean, VA 22102
Tel.: 703-564-0220, x 225
Direct: 703-448-2617
Fax: 703-564-0221
www.cwattorneys.com

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND PROHIBITED FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this message is not the intended recipient or is not the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, forwarding, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by e-mail or telephone and delete the original message immediately.

## Kim MacCumbee

| | |
|---|---|
| **From:** | Brad Weiss |
| **Sent:** | Thursday, July 12, 2018 4:38 PM |
| **To:** | Diana Torres |
| **Subject:** | Fwd: Mandatory Mediation Before BBB Arbitration Priority Honda Hampton v. Mr. Mims |

Begin forwarded message:

> **From:** <vbutts@hamptonroadsbbb.org>
> **Date:** July 12, 2018 at 1:19:19 PM PDT
> **To:** "'Brad Weiss'" <brad.weiss@cwattorneys.com>
> **Subject: RE: Mandatory Mediation Before BBB Arbitration Priority Honda Hampton v. Mr. Mims**
>
> Good afternoon Mr. Weiss,
>
> Using Jeremiah Mims telephone number  I was able to speak with him @3:56pm today.
>
> I told Mr. Mimes I am calling regarding his ongoing concern he has with Priority Honda and the letter I sent him. Mr. Mims acknowledged receiving it. I asked his position regarding the letter. He asked, what do I mean. I asked him if he is willing to mediate. He said, "No". I then asked if he is willing to arbitrate the issue. Mr. Mims said, no, he will do neither. Mr. Mims said the way he see it he signed a binding contract and the contract stated to read carefully before signing because it will be legally binding. Mr. Mims stated he read it, signed it and now Priority is trying to get out of it.
>
> I stated to Mr. Mims the contract also has a clause regarding mediation/arbitration should a dispute arise. Mr. Mims did not make any additional comments.
>
> Wherein a Judge can insist Mr. Mims he adhere to the mediation/arbitration clause, BBB cannot. Therefore, no further action can be taken by this office until such time.
>
> Should you have questions, please feel free to contact me.
>
> Respectfully,
> V. Butts, Director of Dispute Resolution
> Better Business Bureau of Greater Hampton Roads
> 586 Virginian Drive
> Norfolk, VA 23505
> main (757) 531-9400, ext. 1210
> fax (757) 531-1388
> vbutts@HamptonRoadsBBB.org
> 

# CHARAPP & WEISS, LLP

ATTORNEYS AT LAW
8180 GREENSBORO DRIVE
SUITE 1000
McLEAN, VIRGINIA 22102

TELEPHONE (703) 564-0220
FACSIMILE (703) 564-0221
WWW.CWATTORNEYS.COM

July 27, 2018

**VIA FEDERAL EXPRESS**

The Honorable Linda Batchelor Smith
Clerk of the Court
Hampton Circuit Court
237 N. King Street
Hampton, Virginia 23669

Re:   Priority Automotive Hampton, Inc. t/a Priority Honda Hampton v. Jeremiah Mims
New Filing

Dear Ms. Smith:

Enclosed for filing, please find one (1) original and two (2) copies of Plaintiff's Civil Cover Sheet and Motion to Compel filed pursuant to Va. Code § 8.01-581.02. Also enclosed is a check (#6217) in the amount of $84.00 for the filing fee. Plaintiff will arrange for service on Defendant by private process server.

Please prepare a service copy for private process service on Defendant Jeremiah Mims, date-stamp the remaining copy and return these copies to me in the self-addressed, postage prepaid envelope.

Should you have any questions, please feel free to contact me.

Very truly yours,

Brad D. Weiss

Enclosures



